HOOD, Judge.
Plaintiff, Oscar Lantier, claims workmen’s compensation benefits based on allegations that he is totally and permanently disabled. The defendants are Guy Scrog-gins, Inc., and its insurer, Continental National American Group. The trial judge concluded that plaintiff is not disabled from performing the duties of his employment, but that he did sustain the loss of a physical function, and that he thus is entitled to benefits under the provisions of LSA-R.S. 23:1221(4) (p).
Judgment was rendered in favor of plaintiff, awarding him compensation at the rate of $35.00 per week for 100 weeks, subject to a credit for payments previously made. Plaintiff has appealed, contending that the trial court erred in failing to find that he is totally and permanently disabled.
Defendants concede that plaintiff sustained the permanent partial loss of the usefulness of his left leg. They contend, however, that he is able to perform all of the duties of his former employment, and that he thus is not disabled within the meaning of the workmen’s compensation law. The sole issue presented on this appeal, therefore, is whether the evidence establishes that plaintiff is totally and permanently disabled.
The accident occurred on October 31, 1966, while plaintiff was working as a roustabout for defendant Scroggins, the latter being engaged in the business of drilling oil wells. As plaintiff was rolling a joint of drill stem pipe on a rack, the pipe became dislodged and it rolled down the ramp over his left ankle, causing injuries which included a fracture of the epiph-ysis of the fibula of the left leg.
Plaintiff testified that he has suffered pain in his left ankle constantly since the accident occurred, that it is painful for him to place weight on the ball of his left foot, that he is unable to lift heavy objects, and that he thus is not able to perform the duties of a roustabout. Plaintiff’s wife and two of his fellow employees testified that after the accident occurred plaintiff has limped, that he has complained of pain in his left foot and that he apparently had experienced difficulty in carrying heavy loads or in climbing.
Lantier was examined and treated by his family physician, Dr. C. Thomas Curtis, a general practitioner, immediately after the accident occurred, and Dr. Curtis continued to treat him for that injury until about April 3, 1967. The treatment administered included hospitalization for three days, the wearing of a cast on his left leg for a period of about seven weeks, and the administering of approximately 49 physical therapy treatments. The therapy treatments were given during the period beginning January 20 and ending March 31,1967.
*254 Dr. Curtis found that as a result of the accident plaintiff sustained an abrasion of the left foreleg and a fracture of the fibula at the ankle joint. The abrasion healed quickly and completely. With reference to the fracture, Dr. Curtis testified that by April 3, 1967, after several months of treatment, plaintiff had “minimal discomfort,” that he had “improved range of motion and less limp,” and that he was “pain-free and was anxious to attempt to return to work.” The doctor discharged plaintiff on that date as being able to return to work as a roustabout, although he felt that Lantier had a disability of about ten percent of the use of the leg. Dr. Curtis examined plaintiff again almost a year later, on March 22, 1968, and found that objectively the ankle examination was “completely negative.” He testified that plaintiff “had recovered from injuries to his ankle sustained in 1966,” although he still felt that he had a disability of ten percent, or less, of the leg.
With reference to plaintiff’s ability to work without substantial pain, Dr. Curtis testified that “functionally the man showed very little disability,” and that he could perform the heavy duties of a roustabout, although he “very conceivably would have pain either recurring or rather persistent.” He stated that “if I had to eat, maybe I could work with the pain he experienced, probably.”
Dr. Guy J. Dunning, Jr., an orthopedic surgeon, examined Lantier on October 17, 1967. He found no physical limitations with respect to plaintiff’s ankle or extremity, and he felt that plaintiff could return to the duties of a roustabout at that time. He testified that he saw nothing which would indicate any permanent disability, or which would preclude plaintiff from performing the heavy labor of a roustabout. He concedes that plaintiff could have a feeling of “tightness” when he walked, but he testified “I don’t think he should have pain.”
Dr. George P. Schneider, an orthopedic surgeon, examined Lantier on August 30, 1968. He found the left ankle and foot to be “cooler to palpation that the right,” the left thigh and calf three-quarters of an inch smaller than the right, and he found some puffiness and induration about the left ankle joint. He felt that plaintiff had sustained a spraining injury to the ankle and “a fracture of some type, even though I wasn’t able to demonstrate it, the latter being on the basis of his history.” He concluded that plaintiff had a “residual disability” because of the “obvious reluctance of the patient to use the part (the left ankle).” The doctor testified that in his opinion “a portion of his reluctance above and beyond the obvious factors * * * were due to a functional or emotional overlay of some type, especially in view of the fact that there was no indication of any interference with the motor mechanism to the toes, and yet the patient absolutely refused to move the toes actively and complained bitterly when I attempted to move them passively.”
Because of his conclusion that plaintiff had a functional or emotional overlay, Dr. Schneider felt that Lantier needed further physical therapy, and that within four to six months he should be “rehabilitated from his injury.” Although Dr. Schneider did not state that plaintiff was disabled from performing the duties of a roustabout, we interpret his testimony to be, in substance, that plaintiff was disabled from performing heavy manual labor at the time he examined him because of the functional or emotional overlay, but that the disability was not permanent and that it could be eliminated by physical therapy within a few months.
The record shows that plaintiff returned to work for his original employer, Scrog-gins, immediately after he was discharged by Dr. Curtis on April 3, 1967, and that he was still working at the same job when Dr. Curtis last saw him about one year later, on March 22, 1968. Plaintiff testified that he performed lighter duties after the accident than he did before, and that the only reason he discontinued working for Scrog- *255 gins was that he was fired. He apparently was discharged from his employment sometime between March 22 and August 30, 1968, because he was working on the earlier date and was not working when Dr. Schneider examined him on the last mentioned date. This suit was filed on March 29, 1968, and we assume that plaintiff was fired shortly thereafter, since he testified that he got fired when “they know that I put my law suit against them.”
We note that when plaintiff was examined by Dr. Schneider, he told the doctor that he had worked for only “a month ■or two” after the accident occurred, when the evidence shows that he actually worked about one year after being discharged by his treating physician. Also, plaintiff testified that after he was discharged by Scroggins, he applied for work “from place to place,” but that he has been unable to find employment since that time.
A compensation claimant will not be held to be disabled and thus entitled to compensation benefits solely because he suffers some residual pain and discomfort when he attempts to work following a work-connected accident. The residual pain or discomfort in such a circumstance will be considered as being disabling only if it is substantial or appreciable pain. Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894 (1962); Moreau v. Employers Liability Assurance Corporation, 180 So.2d 835 (La.App. 3d Cir.1965); Milligan v. Fidelity and Casualty Company of New York, 200 So.2d 104 (La.App. 1st Cir.1967).
In Glidden v. Alexandria Concrete Company, supra, our Supreme Court considered the question of whether a compensation claimant who could perform the duties of his employment, but who suffered pain when doing so, was entitled to compensation benefits. The following test was applied by the court in resolving that question:
“The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health.”
The plaintiff in a workmen’s compensation suit, like the plaintiff in any other civil suit, bears the burden of proving the facts on which he bases his claim, including his alleged disability, by a preponderance of the evidence. Thornton v. Fidelity and Casualty Company of New York, 214 So.2d 192 (La.App. 4th Cir. 1968); Clevinger v. Continental Insurance Companies, 211 So.2d 718 (La.App. 2d Cir.1968).
Also applicable here is the rule that the findings of fact by the trial court, particularly those involving the credibility of witnesses, are entitled to great weight on appeal, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App. 3d Cir. 1966); Miers v. Truck Insurance Exchange, 180 So.2d 559 (La.App. 3d Cir. 1965).
On the evidence produced in the instant suit, the trial judge concluded that plaintiff was able to perform the duties of a roustabout. He obviously rejected the testimony of plaintiff as to the degree of pain which he suffered, and instead he accepted the testimony of plaintiff’s treating physician and of at least one specialist, Dr. Dunning. There is ample evidence to support the findings of the trial court, and we cannot say that he erred in holding that Lantier is not presently disabled. We conclude, therefore, consistent with the finding of the trial court, that plaintiff has failed to establish that he has been disabled since the payment of compensation benefits was discontinued. We thus find no error in the judgment of the district court.
*256 For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.